UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL AARON WITKIN,

Plaintiff,

v.

R. THOMAS,

Defendant.

No.  2:22-cv-01310 DJC DB P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a former state prisoner, proceeds without counsel under 42 U.S.C. § 1983. On February 28, 2023, plaintiff was granted leave to proceed in forma pauperis ("IFP"). See 28 U.S.C. § 1915(a). Defendants' motion to revoke plaintiff's IFP status and to dismiss the case is before the court. (ECF No. 23.) Defendants argue (1) plaintiff made false allegations of poverty and (2) his filing of this suit was malicious. For the reasons set forth below, the motion to dismiss should be granted.

**I.      Background**

Plaintiff, a former prisoner in custody of the California Department of Corrections and Rehabilitation ("CDCR"), was released from custody on July 6, 2022. (See ECF No. 23 at 15, Couture Decl., ¶ 2.) Plaintiff initiated this action with a complaint and IFP application filed on July 25, 2022. (ECF Nos. 1, 2.) In his IFP application, plaintiff alleged he had no funds in any

account, he was unemployed, he had no income in the previous twelve months, and he had no

assets. (ECF No. 2.) As to his regular monthly expenses, plaintiff stated "Plaintiff was paroled…

as a 'transient' with an 'alternate' address of the mailing address on the front of the complaint."

(Id. at 2.) Plaintiff signed the form under penalty of perjury on July 7, 2023.[1] (Id.)

On August 22, 2022, plaintiff filed a "Notice regarding IFP Status" indicating that after

submission of the IFP application, plaintiff agreed to a settlement in Witkin v. Rosario, et al.,

2:20-cv-0126 TLN DMC, and expected to receive settlement funds in the amount of $3,000

within 180 days. (ECF No. 7.) The Notice regarding IFP Status further stated, in relevant part:

> When plaintiff filed his application for IFP status he was paroled as
> a transient to the Sac-Natomas region, and has since been granted a
> pass to temporarily reside with his wife at the address captioned
> above. Along with that move comes a number of living expenses, the
> extent of which is not yet known.

(Id. at 1-2.)

On February 28, 2023, the court granted plaintiff leave to proceed in forma pauperis and

screened the complaint. (ECF No. 9.) The court determined plaintiff's complaint stated the

following claims: (1) denial of outdoor exercise in violation of the Eighth Amendment against

defendants Thomas, Bird, Johnson, and Hughes; and (2) retaliation in violation of the First

Amendment against defendant Martinez. (Id.) Pursuant to plaintiff's notice of election and the

court's order of May 16, 2023, this case proceeded on those claims. (ECF No. 10, 16.) On March

30, 2023, the undersigned ordered service of the complaint on the defendants. (ECF No. 11.)

On September 11, 2023, defendants filed the motion to revoke plaintiff's IFP status

presently before the court. (ECF No. 23.) Defendants argue plaintiff made false allegations of

poverty such that the case should be dismissed under 28 U.S.C. § 1915(e)(2)(A). (ECF No. 23.)

Defendant also argue plaintiff's financial circumstances have improved. (Id.) Finally, defendants

seek to have the case dismissed as malicious under 28 U.S.C. § 1915(e)(2)(B)(i). (Id.)

On November 27, 2023, the undersigned ordered plaintiff to submit, within 21 days, an

Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form) ("AO

---

[1] On July 28, 2022, plaintiff filed another copy of the IFP affidavit signed on July 7, 2022. (ECF No. 6.)

239"). (ECF No. 30.) On January 16, 2024, plaintiff filed a "Notice re IFP." (ECF No. 31.) Therein, plaintiff states his financial circumstances have changed due to his employment, and thus that there is no basis for him to file a further IFP application. (Id. at 2.) Plaintiff indicates he is prepared to pay the fees in full. (Id.)

## II.    Legal Standard

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that… the allegation of poverty is untrue; or … the action or appeal… is frivolous or malicious." 28 U.S.C. § 1915(e)(2). "To dismiss [a] complaint pursuant to § 1915(e)(2), a showing of bad faith is required, not merely inaccuracy." Escobedo v. Applebees, 787 F.3d 1226, 1235 n.8 (9th Cir. 2015).

Where "the allegation of poverty is untrue but there is no showing of bad faith, the court should impose a lesser sanction than outright dismissal with prejudice...." Witkin v. Lee, No. 2:17-cv-0232-JAM-EFB P, 2020 WL 2512383, at *3 (E.D. Cal. May 15, 2020), report and recommendation adopted, 2020 WL 4350094 (E.D. Cal. July 29, 2020), appeal dismissed, 2020 WL 8212954 (9th Cir. Dec. 9, 2020). "Courts that have declined to dismiss an action under § 1915(e)(2)(A) have generally based their decisions on the actual poverty of the plaintiff, despite a technical inaccuracy in the IFP application, and the absence of a showing of bad faith." Id. (citing collected cases).

"On the flip side, courts routinely dismiss with prejudice cases upon finding that the plaintiff has intentionally withheld information that may have disqualified plaintiff from obtaining IFP status or has otherwise manipulated his finances…; i.e., where the facts show that the inaccuracy on the IFP application resulted from the plaintiff's bad faith." Witkin v. Lee, 2020 WL 2512383, at *3; see also Steshenko v. Gayrard, Nos. 13-CV-03400–LHK & 13-CV–04948–LHK, 2015 WL 1503651, at *5 (N.D. Cal. Apr. 1, 2015) ("Where the applicant has knowingly provided inaccurate information on his or her IFP application, the dismissal may be with prejudice.") (citing Thomas v. Gen. Motors Acceptance Corp., 288 F.3d 305, 306 (7th Cir. 2002); Attwood v. Singletary, 105 F.3d 610, 612-13 (11th Cir. 1997); Romesburg v. Trickey, 908 F.2d 258, 260 (8th Cir. 1990); Thompson v. Carlson, 705 F.2d 868, 869 (6th Cir. 1983)), aff'd sub

3

nom. <u>Steshenko v. Albee</u>, 691 F. App'x 869 (9th Cir. 2017). In determining whether a plaintiff acted in bad faith, a court may consider whether the plaintiff is an experienced litigator. <u>See, e.g.</u>, <u>Vann v. Comm'r of N.Y. City Dep't of Correction</u>, 496 F. App'x 113, 115 (2nd Cir. 2012) ("To determine whether a plaintiff has acted in bad faith a court may consider a plaintiff's familiarity with the in forma pauperis system and history of litigation.").

Separately, a court may deem an action to be malicious by finding it was "filed with the intention or desire to harm another." <u>Washington v. Los Angeles Cnty. Sheriff's Dep't</u>, 833 F.3d 1048, 1055 (9th Cir. 2016) (discussing maliciousness in the context of the three strikes provision of § 1915(g)) (quoting <u>Andrews v. King</u>, 398 F.3d 1113, 1121 (9th Cir. 2005) ("A case is malicious if it was filed with the "intention or desire to harm another."); <u>see also</u> <u>Lindell v. McCallum</u>, 352 F.3d 1107, 1109 (7th Cir. 2003) (although "'malicious' ... is sometimes treated as a synonym for 'frivolous,' ... [it] is more usefully construed as intended to harass"). In evaluating maliciousness under § 1915(e)(2), a district court engages in "a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure, or harass the defendants." <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086 (3rd Cir. 1995).

**III.    Analysis**

**A.    Maliciousness**

In 2021, plaintiff filled out a "SMART Goal-Planning" worksheet. (<u>See</u> ECF No. 23-1 at 4-5, "Worksheet".) Plaintiff's stated objective on the Worksheet was "[b]ringing the authorities to justice." (<u>Id.</u> at 4.) His stated goal was "complete the litigation of 20 federal lawsuits against CDCR" in the Eastern District of California. (<u>Id.</u> at 4.) Plaintiff would try to reach this goal by December 1, 2023, and it would be completed when he "knock[ed] down CDCR for about $250,000." (<u>Id.</u> at 5.) Plaintiff indicated he would know he reached his goal when he "received 20 checks." (<u>Id.</u> at 4.) Plaintiff filed this action on July 25, 2022. (ECF No. 1.)

Defendants argue this suit was maliciously filed based on plaintiff's prior statements in the "SMART Goal-Planning" worksheet, which show an intent to harm CDCR through pursuit of litigation. (ECF No. 23 at 11-12.) Defendants argue plaintiff's litigation activity shows he is

1   pursuing his goal of attempting to harm, rather than attempting to remedy a wrong, by filing this

2   case. (Id. at 12.)

3       In response, plaintiff declares that none of his civil rights actions were filed for an

4   improper purpose or any reason other than an honest attempt to vindicate violations of his

5   constitutional rights. (ECF No. 25-1, ¶ 6.) Plaintiff argues the court's screening order finding

6   cognizable claims disposes of any contention that the complaint is not an appropriate effort to

7   vindicate his rights. (ECF No. 25 at 4.) The court notes, however, the screening of the complaint

8   under subsections (ii) and (iii) of 28 U.S.C. § 1915(e)(2)(B) is a distinct inquiry from any

9   determination of maliciousness under 28 U.S.C. § 1915(e)(2)(B)(i). See 28 U.S.C. §

10  1915(e)(2)(B).

11      Defendants request the court to take judicial notice of 18 exhibits, including Party Search

12  Results for Michael Witkin from the PACER Case Locator and Orders or Findings and

13  Recommendations from 17 cases. (ECF No. 23-3.) The court takes judicial notice of the PACER

14  Party Search results for plaintiff, which is publicly available on PACER. See Harris v. Cnty. of

15  Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (a court may take judicial notice of "undisputed

16  matters of public record"). Plaintiff has filed a total of 16 civil rights lawsuits against various

17  CDCR defendants beginning in 2012. (See ECF No. 23-3 at 6-8, Request for Judicial Notice

18  ("RJN").) Plaintiff filed eight lawsuits against CDCR defendants between 2020 and 2022 and

19  four lawsuits against CDCR defendants in 2021 and 2022. (Id. at 7-8.)

20      In addition, plaintiff has filed three separate lawsuits bringing denial of exercise claims.

21  Significantly, plaintiff's present claim in this case alleging denial of outdoor exercise is similar to

22  claims he previously litigated in more than case. The court takes judicial notice of the court

23  filings in Witkin v. Swarthout, et al., 2:13-cv-01931-GEB-KJN and Witkin v. Wise, et al., 2:19-

24  cv-00974-KJM-KJN. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th

25  Cir. 2006) (courts "may take judicial notice of court filings"). In Witkin v. Swarthout, plaintiff

26  alleged he was denied outdoor exercise for nearly three months. (See ECF No. 23-3 at 24-26,

27  RJN.) Subsequently, in Witkin v. Wise, plaintiff alleged he was denied outdoor exercise time for

28  90 days and was retaliated against. (Id. at 94-95.) In opposition to the defendants' motion to opt

out of the court's ADR Pilot Program in <u>Witkin v. Wise</u>, plaintiff argued the exercise claim he was bringing was "identical" to one in which he had obtained a $10,540 settlement. (<u>Id.</u> at 151.) In the instant case, too, plaintiff alleges he was denied outdoor exercise for 92 days (from December 8, 2020, through March 10, 2021) and was retaliated against. (ECF No. 1 at 4-6.)

The court does not infer maliciousness based on plaintiff's filing of three similar denial of exercise claims. However, plaintiff's 2021 statements that he intended to prosecute 20 cases against CDCR in this district court to net $250,000, considered with his litigation history, shows an intent to abuse the federal justice system for the purpose of harming or harassing the defendants in bringing such a claim in the present case. Considering the allegations in the present case, plaintiff's litigation history, and the statements in plaintiff's "SMART Goal-Planning" worksheet, plaintiff filed this action as part of his stated goal to extract $250,000 from CDCR. It was, therefore, filed with the intent or desire to harm or harass, and is malicious. <u>See</u> <u>Washington</u>, 833 F.3d at 1055; <u>King</u>, 398 F.3d at 1121; <u>Lindell</u>, 352 F.3d at 1109; <u>Deutsch</u>, 67 F.3d at 1086.

## B.    Plaintiff's Allegations of Poverty

### 1.    Prior Cases

The court takes judicial notice of the filings in in this court in <u>Witkin v. Sloan</u>, 2:16-cv-02950-JAM-EFB, and <u>Witkin v. Lee</u>, 2:17-cv-00232-JAM-EFB. <u>See</u> <u>Reyn's</u>, 442 F.3d at 746 n.6. In both cases, the court concluded plaintiff had failed to disclose the settlement funds he instead had elected to divert to his mother. (ECF No. 23-3 at 48-57 & 62-71.) In those cases, the court considered the timeline and determined plaintiff was aware of the potential litigation when he elected to have funds sent to his mother rather than pay the filing fees. (<u>See</u> <u>id.</u>) The court found plaintiff was an experienced litigator and acted in bad faith in failing to include the settlement funds in his IFP application and intentionally keep funds out of his prison account in order to improve his chances of obtaining IFP status. (<u>See</u> <u>id.</u>)

### 2.    This Case

Prior to his release from custody, plaintiff sought permission to live with his then-fiance, Rasheetah Foster. (ECF No. 23 at p. 15, ¶ 3.) Plaintiff sought a transfer from Sacramento to Vallejo for parole supervision for that purpose, which resulted in a transfer investigation. (<u>Id.</u>)

During this investigation, Ms. Foster confirmed she was employed at Chevron headquarters. (Id.) Plaintiff's request was initially denied because the two were not legally married, and, instead, his residence was approved as "Transient." (Id., ¶¶ 3, 4.) Plaintiff was released from CDCR custody on July 6, 2022, (Id., ¶ 2.)

Plaintiff reported to parole the next day on July 7, 2022, and presented a marriage license showing he was married to Rasheetah Foster the same day. (ECF No. 23 at p. 15, ¶¶ 4, 5.) His address was updated to the "Alternate Address" on Kentucky Street in Vallejo, California, on July 7, 2022. (Id., ¶¶ 4, 6.) Plaintiff was issued a travel permit allowing him to travel to and live in Vallejo at the Kentucky Street address. (Id., ¶¶ 6-9, 10.) Plaintiff filed his first IFP declaration on July 25, 2022. (ECF No. 2.) Plaintiff signed the declaration on July 7, 2022. (Id.) He filed the "Notice regarding IFP Status" reporting his expected settlement funds on August 22, 2022. (ECF No. 7.)

Plaintiff informed his parole officer he began working on August 9, 2022. (ECF No. 23 at p. 15-16, ¶¶ 8, 9.) Plaintiff confirmed his continued employment on August 19, 2022. (Id., ¶ 11.) Plaintiff confirmed his continued employment on September 20, 2022, and November 8, 2022. (ECF No. 23 at p. 17, ¶¶ 3, 4.) Plaintiff's wife also remained employed for Chevron. (Id., ¶ 3.)

Defendants argue plaintiff's statements asserting his impoverished status, which were filed on July 25, 2022, and updated on August 22, 2022, failed to include information regarding his employment. (ECF No. 23 at 3.) They also argue plaintiff provided misleading statements regarding his residence. (Id.)

Plaintiff denies that he made false allegations of poverty. (ECF No. 25 at 4.) He notes the parole authorities deemed him a transient, he had no money, and did not know the extent of his living expenses when he so stated. (ECF No. 25 at 2.) He notes he immediately reported the $3,000 settlement in this instance. (ECF No. 25-1, ¶ 11.) He states he initially obtained a temporary day labor position, was no longer working as of September 2022, and did not obtain regular employment until January 10, 2023. (Id., ¶¶ 9, 14.)

Plaintiff's statement in the IFP application that he was paroled as "transient" was technically accurate if only for the day of his release and part of the following day, which is the

7

1    same day he signed the IFP application. However, it appears plaintiff deliberately misrepresented

2    his housing status to appear that he was homeless. Plaintiff signed his first IFP declaration on July

3    7, 2022. Even though plaintiff was married that same day, had his address updated to the Vallejo

4    address on the same day, and was authorized to travel to and live at the Vallejo address on the

5    same day, he nevertheless indicated to the court he was paroled as transient. (See ECF No. 23 at

6    p. 15, ¶¶ 4-6, 9, 10.) Moreover, plaintiff did not file the IFP form until July 25, 2022, well after he

7    was living at the Vallejo address with his gainfully employed spouse, and well after the

8    information contained therein was stale.

9           Moreover, plaintiff's Notice regarding IFP Status filed on August 22, 2022, while

10   reporting his $3,000 settlement funds, did not disclose his recent employment or any support from

11   his employed spouse with whom he resided. Plaintiff does not dispute that he informed his parole

12   agent he had obtained employment as of August 9, 2022. (See ECF No. 23 at p. 15-16, ¶¶ 8, 9.)

13   Moreover, told his parole officer he was still working construction jobs on September 20, 2022,

14   and November 8, 2022. (Id. at p. 17, ¶¶ 3, 4.)

15          Plaintiff, who was an experienced litigator, was familiar with the IFP system and the need

16   to accurately disclose all income, having been sanctioned for bad faith omissions twice

17   previously. This history and the present circumstances support a finding of bad faith. See, e.g.,

18   Witkin v. Lee, 2020 WL 2512383, at *3. Specifically, the court infers plaintiff intentionally

19   withheld information regarding his housing status, employment, and other support that may have

20   disqualified him from obtaining IFP status. Plaintiff did not commit a minor misstatement or

21   omission; instead, he manipulated his housing status to appear that he was homeless, omitted his

22   wife's income, and deliberately misrepresented his employment status to conceal the true facts

23   from the court. Accordingly, the case should be dismissed with prejudice. See Thomas, 288 F.3d

24   at 306.

25   ////

26   ////

27   ////

28   ////

8

1    **IV.    Conclusion**

2        For the reasons stated above, IT IS RECOMMENDED that the motion to revoke

3    plaintiff's in forma pauperis status and to dismiss the case as malicious (ECF No. 23) be

4    GRANTED and this case be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A).

5        These findings and recommendations are submitted to the United States District Judge

6    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after

7    being served with these findings and recommendations, any party may file written objections with

8    the court and serve a copy on all parties. Such a document should be captioned "Objections to

9    Magistrate Judge's Findings and Recommendations." Any response to the objections shall be

10   filed and served within 7 days after service of the objections. The parties are advised that failure

11   to file objections within the specified time may waive the right to appeal the District Court's

12   order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

13   Dated:  February 12, 2024

14

15   _____

16   DEBORAH BARNES
     UNITED STATES MAGISTRATE JUDGE
17
     DLB7
     witk1310.ifp.fr

18

19

20

21

22

23

24

25

26

27

28