1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL AARON WITKIN,                No.  2:22-cv-01310 DJC SCR P

12              Plaintiff,

13        v.                             ORDER AND FINDINGS &
                                         RECOMMENDATIONS
14   R. THOMAS, et al.,

15              Defendants.

16

17          Plaintiff is a former state prisoner proceeding pro se with a civil rights action under 42

18   U.S.C. § 1983.  Before the undersigned is defendants' motion to dismiss pursuant to Federal Rule

19   of Civil Procedure 12(b)(6).  For the reasons set forth below, the undersigned recommends that

20   defendants' motion be granted in part and denied in part as follows: (1) granted as to defendants'

21   motion to dismiss plaintiff's First Amendment retaliation claim; and (2) denied as to defendants'

22   motion to dismiss plaintiff's Eighth Amendment claim on qualified immunity grounds.

23                          **PROCEDURAL BACKGROUND**

24   **I.      Plaintiff's Complaint**

25          The action proceeds on plaintiff's complaint filed on July 25, 2022.  (ECF No.1.)  Plaintiff

26   alleges he was transferred to Deuel Vocational Institution ("DVI") in April of 2020.  (Id. at 3.)

27   The only exercise opportunity was exercise yard.  (Id.)  When plaintiff arrived, inmates were

28   offered exercise yard for one hour per day, seven days a week.  (Id.)

1       Defendants Thomas, Bird, Johnson, and Hughes were responsible for developing yard

2  schedule and ensuring inmates received the legal minimum amount of exercise per week.  (ECF

3  No. 1 at 3.)  Upon learning in September 2020 that DVI was going to close, defendants began

4  dramatically reducing inmate access to the exercise yard.  (Id.)

5       On October 29, 2020, plaintiff had a grievance interview with defendant Martinez about

6  his increasingly curtailed exercise opportunities.  (ECF No. 1 at 5.)  By December 2020, plaintiff

7  was receiving no exercise time, even though defendants knew denying plaintiff the weekly

8  minimum amount of exercise created an excessive risk to plaintiff's health.  (Id. at 4.)  From

9  December 3, 2020, until March 10, 2021, defendants denied plaintiff meaningful exercise

10 opportunities completely.  (Id.)  Instead of fulfilling their duty to provide plaintiff with exercise,

11 the defendants blamed the COVID-19 pandemic for their failure.  (Id.)

12      Plaintiff filed another exercise grievance on February 10, 2021.  (ECF No. 1 at 5.)  In an

13 apparent response to the grievance, plaintiff was called for the first time to a landscaping job he

14 had been assigned to for several months.  (Id.)  On February 18, 2021, defendant Martinez was

15 waiting for plaintiff outside his work area.  (Id.)  When plaintiff arrived, Martinez laughed and

16 said, "It looks like you're getting your ten hours of out of cell time now."  (Id.)  Plaintiff

17 explained he was seeking ten hours of exercise time, not merely out of cell time.  (Id.)

18      On February 19, 2021, defendant Martinez was waiting at plaintiff's work area again.

19 (ECF No. 1 at 5.)  Plaintiff was carrying a bag of ice water.  Martinez threatened plaintiff with a

20 counseling chrono for bringing "contraband" (the ice water) home from work.  (Id.)  Martinez

21 stated prison officials only had to provide plaintiff with ten hours of out of cell time per week,

22 and not ten hours of exercise.  (Id.)  Plaintiff stated, "I'm threatening you personally with federal

23 civil rights litigation if you keep participating in these violations of my civil rights."  (Id. at 5-6.)

24      On February 22, 2021, plaintiff was issued a 2-week lay-in for injuries sustained on the

25 first week of the landscaping job.  (ECF No. 1 at 6.)  Martinez stated, "You might as well head

26 back to your cell and work on your exercise lawsuit because you're not going to yard until your

27 lay-in is over."  (Id.)  Plaintiff asked, "What regulation says I can't go to yard with a lay in?"

28 (Id.)  Martinez replied, "I'm saying it.  I will personally write you a Rules Violation Report

1   ("RVR") if you try to go to yard during your lay-in."  (Id.)  As a result, plaintiff was denied an
2   additional two weeks of exercise right around the time prison officials re-opened the yard.  (Id.)
3       During the time frame of April through November 2020, plaintiff was prosecuting a
4   separate federal civil rights action.  (ECF No. 1 at 7.)  Defendants Thomas, Bird, Johnson, and
5   Doe 1 were responsible for inmate law library operations.  (Id.)  These defendants restored other
6   inmate services by May, such as canteens and dayrooms, but used the COVID-19 situation to
7   deny physical law library access to inmates with active court deadlines even though the law
8   library was extremely spacious in comparison to other sites operating normally by May 2020.
9   (Id. at 8.)  The defendants' actions prevented plaintiff from performing legal research and
10  prosecuting his civil rights action.  (Id.)

## II.    Statutory Screening

12      Judge Barnes, the previously assigned magistrate judge, screened plaintiff's complaint per
13  28 U.S.C. § 1915A and determined it stated cognizable claims for: (1) denial of outdoor exercise
14  in violation of the Eighth Amendment against defendants Thomas, Bird, Johnson, and Hughes;
15  and (2) retaliation in violation of the First Amendment against defendant Martinez.  (ECF No. 9.)
16  The screening order gave plaintiff the option of proceeding on his cognizable claims or filing an
17  amended complaint.  (Id. at 8.)  Plaintiff elected to proceed on his claims as screened.  (Id. at 10.)

## III.   Defendants' Motion to Dismiss, 28 U.S.C. § 1915(e)

19      On September 11, 2023, defendants filed a motion to revoke plaintiff's in forma pauperis
20  status and to dismiss the action as malicious and for false declaration of poverty, 28 U.S.C. §
21  1915(e)(2)(A) and (B)(i).  (ECF No. 23.)  On February 13, 2024, Judge Barnes issued findings
22  and recommendations that defendants' motion be granted and the case dismissed with prejudice.
23  (ECF No. 32.)  On September 23, 2024, District Judge Calabretta rejected the findings and
24  recommendations, concluding that changes to plaintiff's financial situation after he requested
25  leave to proceed in forma pauperis were irrelevant and that there was insufficient evidence that
26  plaintiff brought the action with an intent or desire to harm defendants.  (ECF No. 36.)  Plaintiff
27  subsequently paid the required filing fee on October 18, 2024, per Judge Calabretta's order.  (See
28  Docket.)

**DEFENDANTS' MOTION TO DISMISS**

**I.      Defendants Rule 12(b)(6) Motion**

Defendants move to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.  (ECF No. 39.)  Defendant Martinez argues that plaintiff's retaliation claim should be dismissed because (1) a threat of a counseling chrono is not an adverse action; (2) plaintiff fails to allege the requisite nexus between the alleged adverse action and his protected activity; and (3) the allegations suggest that the threatened disciplinary action furthered a legitimate correctional goal because prison medical policies prohibit inmates with medical lay-in orders from yard time.  (<u>Id.</u> at 6-8.)  Defendants Johnson, Bird, Thomas, and Hughes contend they are entitled to qualified immunity on plaintiff's conditions of confinement claim.  Specifically, defendants assert that it was not clearly established that limiting inmates' outdoor exercise time during an "unprecedented" global pandemic would violate the Eighth Amendment.  (<u>Id.</u> at 9-11.)

**II.      Plaintiff's Opposition**

Plaintiff opposes defendants' motion in part.  (ECF No. 43.)  Plaintiff agrees that "defendant Martinez should properly be dismissed."  (<u>Id.</u> at 1.)  However, plaintiff maintains that defendants Johnson, Bird, Thomas, and Hughes are not entitled to qualified immunity.  Plaintiff argues that the complaint's allegations, accepted as true, make clear that defendants restricted outdoor exercise time not because of the COVID-19 pandemic, but because of the pending closure of DVI.  (<u>Id.</u> at 2-3.)

**III.      Defendants' Reply**

On reply, defendants argue that plaintiff did not address their qualified immunity argument in his opposition, and therefore, conceded the issue.  (ECF No. 44 at 2-3.)  Plaintiff's opposition, they contend, only reiterated the allegations in the complaint and failed to cite any caselaw authority showing that the alleged unlawfulness of their actions was clearly established at the relevant time.  (<u>Id.</u>)

////

////

////

4

1

**LEGAL STANDARDS**

2

**I.      Federal Rule of Civil Procedure 12(b)(6)**

3

A defendant may move to dismiss a claim under Rule 12(b)(6) if the allegation "fail[s] to

4

state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive, the

5

plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

6

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

7

Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

8

A claim is facially plausible "when the plaintiff pleads factual content that allows the

9

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

10

Iqbal, 556 U.S. at 678.  This standard is a "context-specific task that requires the reviewing court

11

to draw on its judicial experience and common sense," Iqbal, 556 U.S. at 679, and to "draw all

12

reasonable inferences in favor of the nonmoving party."  Boquist v. Courtney, 32 F.4th 764, 773

13

(9th Cir. 2022) (quoting Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d

14

938, 945 (9th Cir. 2014)) (internal quotation marks omitted).

15

On a Rule 12(b)(6) motion, the court may consider all materials incorporated into the

16

complaint by reference, as well as evidence properly subject to judicial notice.  Weston Fam.

17

P'ship LLLP v. Twitter, Inc., 29 F.4th 611, 617-18 (9th Cir. 2022).  "Ultimately, dismissal is

18

proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of

19

facts to support its claims."  Boquist, 32 F.4th at 773–74 (cleaned up).

20

The court may dismiss for failure to state a claim when the allegations of the complaint

21

and judicially noticeable materials establish an affirmative defense or other bar to recovery, such

22

as the expiration of the statute of limitations.  See Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th

23

Cir. 2013) (quoting Jones v. Bock, 549 U.S. 199, 215 (2007)); see also Goddard v. Google Inc.,

24

640 F. Supp. 2d 1193, 1199, n. 5 (N.D. Cal. 2009) (noting that "affirmative defenses routinely

25

serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of

26

the [c]omplaint").  However, dismissal under Rule 12(b)(6) is improper if the allegations of the

27

complaint and judicially noticeable materials concerning the defense involve disputed issues of

28

fact.  ASARCO, LLC v. Union Pacific R. Co., 765 F.3d 999, 1004 (9th Cir. 2014) (citing Scott v.

1    Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)).

2           "[A] district court should grant leave to amend even if no request to amend the pleading

3    was made, unless it determines that the pleading could not possibly be cured by the allegation of

4    other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting In re Doe, 58 F.3d

5    494, 497 (9th Cir. 1995)).  A pro se litigant is entitled to notice of the deficiencies in the

6    complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by

7    amendment.  See Akhtar v. Mesa, 698 F.3d 1202, 1213 (9th Cir. 2012).

8    **II.      Eighth Amendment Outdoor Exercise**

9           The Eighth Amendment's prohibition against cruel and unusual punishment protects

10   prisoners not only from inhumane methods of punishment but also from inhumane methods of

11   confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v.

12   Brennan, 511 U.S. 825, 847 (1994)).  "An Eighth Amendment claim that a prison official has

13   deprived inmates of humane conditions of confinement must meet two requirements, one

14   objective and one subjective." Norbert v. City & Cnty. of San Francisco, 10 F.4th 918, 927 (9th

15   Cir. 2021) (quoting Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994)).  Under the objective

16   requirement, the inmate must demonstrate "conditions posing a substantial risk of serious harm"

17   that present "an excessive risk to [his] health or safety." Norbert, 10 F.4th at 928 (quoting

18   Farmer, 511 U.S. at 834). "The subjective requirement, relating to the defendant's state of mind,

19   requires deliberate indifference." Id. (quoting Allen, 48 F.3d at 1087).

20          The Ninth Circuit has recognized that "exercise is 'one of the basic human necessities

21   protected by the Eighth Amendment.'" Norbert, 10 F.4th at 928–29 (quoting May v. Baldwin,

22   109 F.3d 557, 565 (9th Cir. 1997)).  In determining whether a deprivation of outdoor exercise is

23   sufficiently serious, the court must consider the circumstances, nature, and duration of the

24   deprivation.  Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979).  "[O]rdinarily the lack of

25   outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment

26   purposes.  Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010) (quoting LeMaire v. Maass, 12

27   F.3d 1444, 1457 (9th Cir.1993)).

28   ////

6

1 | ### III.   Qualified Immunity

2     "In § 1983 actions, qualified immunity protects government officials from liability for

3 civil damages insofar as their conduct does not violate clearly established statutory or

4 constitutional rights of which a reasonable person would have known." <u>Sampson v. County of

5 Los Angeles</u>, 974 F.3d 1012, 1018 (9th Cir. 2020) (citations and internal quotation marks

6 omitted).  To be entitled to qualified immunity at the motion to dismiss stage, a state official must

7 show that the allegations in the complaint do not make out a violation of a constitutional right or

8 that any such right was not clearly established at the time of the alleged misconduct.  <u>See

9 Hampton v. California</u>, 83 F.4th 754, 765 (9th Cir. 2023) (citing <u>Pearson v. Callahan</u>, 555 U.S.

10 223, 232-236 (2009)), <u>cert. denied sub nom.</u> <u>Diaz v. Polanco</u>, 144 S. Ct. 2520 (2024).

11     "At the motion to dismiss stage, 'dismissal is not appropriate unless we can determine,

12 based on the complaint itself, that qualified immunity applies.'" <u>Polanco v. Diaz</u>, 76 F.4th 918,

13 925 (9th Cir. 2023) (quoting <u>O'Brien v. Welty</u>, 818 F.3d 920, 936 (9th Cir. 2016)), <u>cert. denied</u>,

14 144 S. Ct. 2520 (2024).  At this stage, "[i]f the operative complaint contains even one allegation

15 of a harmful act that would constitute a violation of a clearly established constitutional right, then

16 plaintiffs are entitled to go forward with their claims." <u>David v. Kaulukukui</u>, 38 F.4th 792, 799

17 (9th Cir. 2022) (quoting <u>Keates v. Koile</u>, 883 F.3d 1228, 1235 (9th Cir. 2018)).

18 | **DISCUSSION**

19 | ### I.   Plaintiff's First Amendment Retaliation Claim Should Be Dismissed.

20     As noted above, plaintiff agrees that defendant Martinez "should properly be dismissed"

21 from the action.  (ECF No. 43 at 1.)  Accordingly, the undersigned recommends that plaintiff's

22 First Amendment retaliation claim against defendant Martinez be dismissed.[1]

23 ////

24 ////

25 ////

26

---

27 [1]  Defendants requested judicial notice of prison rules and regulations concerning RVRs and medical lay-ins to support dismissal of plaintiff's retaliation claim.  (Exhs. A-C, ECF No. 39-1; <u>see also</u> ECF No. 39 at 5 (discussing exhibits to be judicially noticed).)  Because plaintiff does

28 not oppose dismissal, the undersigned will deny defendants' request for judicial notice as moot.

7

1  **II.**    **Defendants Are Not Entitled to Qualified Immunity on Plaintiff's Eighth**

2          **Amendment Claim**

3          Defendants move to dismiss plaintiff's Eighth Amendment outdoor exercise claim on

4  qualified immunity grounds.  Defendants' argument rests on the second prong of the analysis, i.e.,

5  that their actions did not violate any clearly established law: "It certainly was not established that

6  in the face of an unprecedented and not-well-understood global pandemic, attempting to combat

7  the virus's spread by temporarily limiting inmates' movements, including outdoor exercise time,

8  would violate the Eighth Amendment."  (ECF No. 39 at 10-11.)

9          The relevant, dispositive inquiry in determining whether a right is clearly established is

10  whether it would be clear to a reasonable official that his conduct was unlawful in the situation he

11  confronted.  Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled in part on other grounds by

12  Pearson, 555 U.S. at 236.)  "In the Ninth Circuit, we begin [the clearly established] inquiry by

13  looking to binding precedent.  If the right is clearly established by decisional authority of the

14  Supreme Court or this Circuit, our inquiry should come to an end."  Moore v. Garnand, 83 F.4th

15  743, 750 (9th Cir. 2023) (quoting Boyd v. Benton County, 374 F.3d 773, 781 (9th Cir. 2004)).

16          Prison officials' "duty to provide regular outdoor exercise" is clearly established.  Allen,

17  48 F.3d at 1088; Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996), opinion amended on denial

18  of reh'g, 135 F.3d 1318 (9th Cir. 1998).  However, in determining whether prison officials are

19  entitled to qualified immunity, courts grant "wide-ranging deference" to officials balancing their

20  dual obligations to ensure prison safety and accord outdoor exercise.  See Norwood v. Vance, 591

21  F.3d 1062, 1069 (9th Cir. 2010) (granting qualified immunity to officials who limited outdoor

22  exercise during "a particularly violent period in the prison's history"); Corona v. Knowles, 687 F.

23  App'x 602, 603 (9th Cir. 2017) (affirming grant of summary judgment based on qualified

24  immunity where prison officials restricted outdoor exercise for five months in response to violent

25  attacks).  For instance, it is not clearly established "precisely how … or when a prison facility

26  housing problem inmates must return to normal operations, including outside exercise, during and

27  after a state of emergency called in response to a major riot."  Noble v. Adams, 646 F.3d 1138,

28  1143 (9th Cir. 2011).

1    Here, the three-plus months plaintiff allegedly spent without exercise was sufficiently

2    serious to satisfy the objective prong of the analysis.  See Lopez, 203 F.3d at 1132 (a complete

3    denial of exercise lasting 46 days was sufficient to invoke Eighth Amendment protection).  The

4    question then is whether defendants' actions are entitled to deference due to some emergency

5    circumstance.  See Noble, 646 F.3d at 1143 (in determining qualified immunity, courts "defer to

6    prison officials' *judgment* so long as that judgment does not manifest either deliberate

7    indifference") (emphasis in original).

8    Accepting the complaint's allegations as true, it is plausible that defendants denied

9    plaintiff outdoor exercise because of DVI's pending closure and not because of COVID-19.  (See

10   ECF No. 1 at 3-4.)  The complaint adequately alleges defendants Thomas, Bird, Johnson, and

11   Hughes were responsible for developing a yard schedule and provided daily outdoor exercise

12   earlier in the pandemic, before vaccines and other treatments were available.  (Id. at 3, ¶¶ 13-14.)

13   They then began "dramatically reducing" outdoor exercise only after DVI was slated for closure

14   in September 2020 and stopped it altogether in December 2020.  (Id. at 3, ¶ 15-16.)  Plaintiff was

15   denied outdoor exercise between December 2020 and March 2021, which he claims defendants

16   knew violated existing procedures.  (Id. at 3-4, ¶¶ 17, 21.)  From these allegations alone, the

17   undersigned cannot infer an emergency circumstance that justified defendants' breach of their

18   clearly established duty to provide outdoor exercise.  See Norwood v. Woodford, 583 F. Supp. 2d

19   1200, 1206 (S.D. Cal. 2008) (declining to grant qualified immunity on a motion to dismiss where

20   plaintiff was denied outdoor exercise for 39 days and defendants' assertion of an emergency

21   lockdown situation was not evident from face of complaint).

22   Defendants counter that the restrictions were in fact a response to the pandemic.  To

23   establish California as the "epicenter of the global pandemic," defendants refer to caselaw

24   involving challenges to COVID-related closures that contain data on confirmed cases and

25   timelines of the pandemic.  (See ECF No. 39 at 10-11; ECF No. 44 at 2-3.)  For example, they

26   cite a Stay-at-Home Order issued by the State of California on December 3, 2020 – the same day

27   plaintiff alleges the outdoor exercise stopped – to establish the obvious dangers at that time.

28   (ECF No. 39 at 10 (citing South Bay United Pentecostal Church v. Newsom, 985 F.3d 1128,

1131-36 (9th Cir. 2021).)  These COVID-related facts, however, do not appear on the face of the

complaint.  See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)

(excluding material outside the pleadings from consideration on a Rule 12(b)(6) motion to

dismiss).  Nor have defendants requested judicial notice of the Stay-at-Home Order or any other

relevant public health documents so that the undersigned may properly consider them on a motion

to dismiss.  However, even if the Court were to *sua sponte* take judicial notice of these facts, there

would then be a dispute between plaintiff and defendants as to the specific reason for limitations

on outdoor recreation at DVI during the relevant period: were they COVID-19 countermeasures

or were they the result of a decision to close DVI? At this stage of the proceedings, where all

inferences must be drawn in favor of the plaintiff, the court cannot infer that an emergency led to

the decreased outdoor recreation time at DVI, as opposed to the winding-down of operations at

DVI, as plaintiff alleges.

       Finally, plaintiff did not concede or waive qualified immunity as defendants argue on

reply.  (ECF No. 44 at 2-3.)  Although plaintiff did not cite any Eighth Amendment caselaw

authority in his opposition, he pointed to specific complaint allegations to refute defendants'

underlying premise that COVID-19 was the impetus for their actions.[2]  Defendants' waiver

authorities (see ECF No. 44 at 2) are distinguishable in that they turned on invocations of more

novel rights that lacked any basis in caselaw.  In Sunkett v. Boerum, No. 1:21-cv-1137 HBK PC,

2024 WL 4369900, at *7 (E.D. Cal. Sept. 30, 2024), the plaintiff did not identify, and court's own

search did not reveal, authority for plaintiff's "entitlement to due process in the escape review

process."  In Hughey v. Kernan, No. 18-cv-0313 WQH BGS, 2019 WL 329535, at *4 (S.D. Cal.

Jan. 24, 2019), report and recommendation adopted, No. 18-cv-0313 WQH BGS, 2019 WL

1040329 (S.D. Cal. Mar. 5, 2019), the court granted qualified immunity on a motion to dismiss

---

[2] Although case law speaks of a plaintiff's need to "prove" or "show" that a right is clearly established, see, e.g., Carley v. Aranas, 103 F.4th 653, 661 (9th Cir. 2024), this can hardly mean that a pro se plaintiff's case should be dismissed based on qualified immunity simply because that plaintiff has failed to cite to cases establishing such right that are readily apparent to the court. *Cf. Rowe v. Gibson*, 798 F.3d 622, 631 (7th Cir. 2015) (Posner, J.) (noting, in context of a pro se Eighth Amendment case where a judge independently researched relevant issues, "Pure adversary procedure works best when there is at least approximate parity between the adversaries.").

1    where plaintiff cited no authority for his claim that CDCR regulations denied early parole

2    hearings to life-sentence inmates in violation of the Fourteenth Amendment's Equal Protection

3    and Due Process Clauses.  By contrast, plaintiff's Eighth Amendment allegations here find

4    support in the extensive precedential case law establishing the right to outdoor exercise.

5            Accordingly, the undersigned finds that defendants are not entitled to qualified immunity.

6    However, the allegations in the complaint do not foreclose the possibility that, on a fuller record,

7    defendants may ultimately establish that the restrictions on outdoor exercise did not violate any

8    clearly established law.  For example, defendants may ultimately be able to present undisputed

9    facts that the restrictions plaintiff complains about were COVID-19-related precautions, which

10   would necessarily impact the qualified immunity analysis.  The court's denial of qualified

11   immunity "at the motion-to-dismiss stage sheds little light on whether [defendants] might

12   ultimately be entitled to qualified immunity were the case permitted to proceed, at least to the

13   summary judgment stage and the court is presented with facts providing context for the

14   challenged actions."  Keates, 883 F.3d at 1235 (internal quotations omitted).

## CONCLUSION

16           IT IS HEREBY ORDERED that defendants' request for judicial notice (ECF No. 39-1) is

17   denied as moot.

18           In addition, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss be

19   granted in part and denied in part as follows:

20           1.      Defendants' motion to dismiss plaintiff's First Amendment retaliation claim

21   should be granted; and

22           2.      Defendants' motion to dismiss plaintiff's Eighth Amendment claim on qualified

23   immunity grounds should be denied.

24           These findings and recommendations are submitted to the United States District Judge

25   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

26   after being served with these findings and recommendations, any party may file written

27   objections with the court and serve a copy on all parties.  Such a document should be captioned

28   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 1, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE